# United States Court of Appeals
## For the First Circuit

No. 07-1583

UNITED STATES OF AMERICA,

Appellee,

v.

ISAAC NATHANIEL CHANDLER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, Senior U.S. District Judge]

Before

Lynch, Chief Judge,
Tashima,* Senior Circuit Judge,
and Lipez, Circuit Judge.

Donald C. Lockhart, Assistant United States Attorney, with whom Robert Clark Corrente, United States Attorney, and Sandra R. Beckner, Assistant United States Attorney, were on brief, for appellee.

Raymond J. Rigat for appellant.

Isaac Nathaniel Chandler on supplemental brief, pro se.

July 18, 2008

*Of the Ninth Circuit, sitting by designation.

**LIPEZ, Circuit Judge.** Isaac Nathaniel Chandler appeals the 188-month sentence he received after pleading guilty, pursuant to a written plea agreement, to a three-count indictment. The government asks us to dismiss this appeal because, in the plea agreement, Chandler waived his right to direct appeal "if the sentence imposed by the Court is within the guideline range determined by the Court or lower." The district court determined that the applicable guideline range was 188 to 235 months and sentenced Chandler at the lowest point in that range. Chandler argues that we should disregard the waiver of appeal and proceed to the merits of his claims that (1) the district court erred by making a cash-to-drugs conversion, which had the effect of increasing his total offense level by one point, and (2) the resultant sentence was unreasonable. In a pro se submission Chandler also claims that he only assented to the plea agreement because he received ineffective assistance of counsel. He further asks us to remand for resentencing in light of the retroactive amendments to the sentencing guidelines for offenses involving crack cocaine.

On the basis of the record before us, we conclude that Chandler waived his right to appeal a within-guidelines sentence and that enforcement of the waiver would not "work a miscarriage of justice." See United States v. Teeter, 257 F.3d 14, 25 (1st Cir.

2001). Hence, we enforce the waiver and dismiss the appeal. We also dismiss Chandler's pro se claims as procedurally flawed.

I.

The facts are not in dispute. On May 4, 2006, officers from the Providence Police Department executed a search warrant for Chandler and his two residences in Providence. The officers found $205, jewelry, and 6.7 grams of crack cocaine in their search of Chandler himself. Then at the first residence, which was located within 1,000 feet of a middle school, they found 20.36 grams of crack cocaine, a set of digital scales, packaging materials, and cutting agents. At the second residence, the officers found a loaded .45 caliber pistol, several boxes of home theater equipment, two boxes of crack cocaine weighing 13.77 grams, and a safe containing $2,500. Officers also seized a 1994 Lexus with a sophisticated surveillance system installed in the trunk. After being advised of his rights, Chandler admitted that the crack cocaine and the firearm belonged to him. He admitted to selling crack cocaine and stated that he kept the firearm for his protection.

On October 4, 2006, a federal grand jury returned an indictment charging Chandler with possessing with intent to distribute five grams or more of cocaine base within 1,000 feet of a public secondary school, in violation of 21 U.S.C. § 841(a)(1),(b)(1)(B) and § 860, possessing with intent to

distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and being a felon in possession of a firearm,[1] in violation of 18 U.S.C. § 922(g)(1). The indictment also sought forfeiture of the $2,705 in cash, the home theater equipment, and the Lexus.

Chandler entered into a written plea agreement in which he agreed to plead guilty to all three counts, and further agreed, inter alia, that (1) he possessed 40.91 grams of cocaine base in the form of crack cocaine, (2) the items named in the indictment were subject to forfeiture "as proceeds of illegal conduct, property facilitating illegal conduct, property involved in illegal conduct . . . and substitute assets for property otherwise subject to forfeiture," and (3) a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1) would apply to his sentence. In the agreement, he also waived the "right to file a direct appeal, if the sentence imposed by the Court is within the guideline range determined by the Court or lower." The government, in exchange, agreed (1) not to file an information under 21 U.S.C. § 851, (2) not to prosecute Chandler under 18 U.S.C. § 924(c) for possession of a firearm in furtherance of drug trafficking, (3) to recommend an acceptance of responsibility reduction, and (4) to

[1]Chandler had two prior state felony convictions for drug distribution.

recommend the lowest sentence within the applicable guideline range.

The agreement noted that the court was "not bound by the parties' stipulations of fact, offense level adjustments, or the government's recommendations" and that "even if the Court's guideline determinations and sentence [were] different than [Chandler] expect[ed], [Chandler would] not be allowed to withdraw [his] plea of guilty." The agreement contained an integration clause and stated that "[n]o other promises or inducements have been made concerning the plea in this case." The agreement also contained a certification that Chandler and his attorney had discussed the terms of the agreement, and that Chandler had read it or had it read to him, and that he understood its provisions.

At the January 5, 2007 plea hearing, the district court orally confirmed that Chandler had read and discussed the plea agreement with counsel and that he understood it. Chandler affirmed that the agreement did not "leave out anything that [he thought was] part of the agreement" and that no one had "made any other promises to [him] that [had] caused [him] to decide to plead guilty." During the colloquy, the court also specifically addressed the appeal waiver clause twice:

> COURT: Do you also understand that . . . normally, if you are sentenced for an offense, you would have a right to appeal your sentence, but under the terms of the plea agreement, you have agreed to give up any right you have to appeal your sentence, as

> long as the sentence is within whatever guideline range applies in your case?
>
> In other words, you can still appeal your sentence if it's above the guideline range, but if it's within or below the guideline range, you can't appeal, do you understand that?
>
> CHANDLER: Yeah.
>
> . . .
>
> COURT: You would be able to appeal your sentence only if the sentence is above the guideline range that applies in your case. But, otherwise, you wouldn't be able to appeal your sentence. . . . Now, do you understand . . . what all the rights are that I've mentioned?
>
> CHANDLER: Yes.

At the conclusion of the colloquy, the district court found, as required by Federal Rule of Criminal Procedure 11(b), that Chandler was competently, knowingly, and voluntarily pleading guilty to charges for which there was a sufficient factual basis, and accepted the plea.

In its presentence report, the Probation Office converted the $2,705 in cash, which had been found on Chandler's person and in a safe in one of the residences, to its equivalent quantity in crack cocaine.[2] The report also placed Chandler in Criminal

---

[2]The cash was converted to 54.1 grams of cocaine base, based upon an approximate cost of $50 per gram. Chandler does not challenge the accuracy of this cost estimate. As a result of the conversion, the Probation Office concluded that the total quantity of cocaine base involved in the case was 95.01 grams. The net effect of the conversion, when coupled with the other guideline adjustments and Chandler's career offender status, was to place Chandler's total offense level at 32. If he had been sentenced using only the 40.91 grams of crack cocaine actually seized, his total offense level would have been 31.

History Category ("CHC") VI, as a result of his career offender status. These factors, taken together with the firearm enhancement and acceptance of responsibility reduction provided for in the plea agreement, placed the advisory guideline sentencing range at 210 to 262 months.

Over Chandler's objection, the district court adopted the Probation Office's conversion of the cash into a drug quantity for sentencing purposes. The court found that the government had not promised, in the plea agreement, that Chandler's "sentence should be based on possession of 40.91 grams of crack cocaine and not on anything else." The court also noted that the agreement was not silent as to the cash. Instead, it explicitly described the forfeited cash as proceeds of illegal conduct. The court explained:

> [A]lthough the Government didn't specifically say that the cash would be considered or could be considered in determining the calculation of the sentence, it didn't say otherwise, and the other provisions in the agreement suggest that both sides considered the cash to be the proceeds of the drug activity.

The court further noted that it was not, in any case, bound by the plea agreement and was required to make an independent determination as to whether the cash to drug conversion was appropriate. In making that determination, the court stated:

> The facts are that some of the money was found on Mr. Chandler's person, and a substantial quantity was found in a safe in close proximity to drugs and the firearm. . . . I

> think the only reasonable conclusion the Probation Officer could have come to, and did come to, was that this money was the proceeds of drug activity. There's no other explanation for it.

The court added that there was no evidence that Chandler had earned the money from anything other than drug sales.

At the end of the sentencing hearing, and over the objection of the government, the court concluded that sentencing Chandler under CHC VI overstated his criminal history because the two drug felonies that qualified him as a career offender were the only two convictions on his record. The court thus granted a "horizontal" departure and applied CHC V instead of CHC VI. As a result, the court determined that the applicable guideline range was 188 to 235 months. The court then considered the factors delineated in 18 U.S.S.C. § 3553(a) and sentenced Chandler to 188 months. This appeal followed.

**II.**

As a threshold matter, we must determine whether to enforce the appeal waiver in the plea agreement and dismiss Chandler's appeal.[3] In making this determination, "[w]e look first to confirm that the written plea agreement signed by the defendant contains a clear statement elucidating the waiver and delineating

---

[3]In its brief in response to this argument the government has not cited or relied on United States v. Vonn, 535 U.S. 55, 59 (2002), and so we do not consider what effect Vonn may have on this analysis. See United States v. Borrero-Acevedo, No. 06-2655 (1st Cir. July 10, 2008).

its scope." Teeter, 257 F.3d at 24. Second, we examine the transcript of the plea hearing to ascertain whether the district court "question[ed] the defendant specifically about [his] understanding of the waiver provision and adequately inform[ed] [him] of its ramifications." Id. Finally, we consider whether "denying a right to appeal would work a miscarriage of justice." Id. at 25.

The appellate waiver in the written plea agreement clearly meets the standards of the first prong of the Teeter test. The waiver states: "Defendant hereby waives Defendant's right to file a direct appeal, if the sentence imposed by the Court is within the guideline range determined by the Court or lower." (Emphasis added.) This language is broad enough to bar an appeal that challenges the application of the guidelines by the district court. See United States v. McCoy, 508 F.3d 74, 78 n.4 (1st Cir. 2007). At oral argument, Chandler's counsel conceded that Chandler's appeal was within the scope of the written waiver.

Instead, Chandler focuses on a perceived inadequacy in the district court's description of the appellate waiver during the colloquy, the topic of our inquiry under the second prong of the Teeter analysis. He suggests that the district court introduced an ambiguity and undermined the efficacy of the written waiver when it told Chandler that he had given up his right to appeal "as long as the sentence is within whatever guideline range applies" to his

case. Chandler claims that this statement could be understood to mean "whatever guideline range correctly applies" and thus would contradict the written language of the waiver.

The district court's plain language cannot support this strained interpretation. The court did not, in fact, use the word "correctly." Instead, the court unqualifiedly told Chandler that he would not have the right to appeal a within-guidelines sentence, and Chandler confirmed that he understood. At the colloquy, the district court is not required to recite the appeal waiver verbatim from the written agreement. Instead, "the court's interrogation should be specific enough to confirm the defendant's understanding of the waiver and [his] acquiescence in the relinquishment of rights that it betokens." Teeter, 257 F.3d at 24 n.7. When read together with the written agreement, as it should be, the district court's questioning and explanation in this case did not offer any false assurance that Chandler retained a right to appeal a within-guidelines sentence for any reason. See United States v. De-La-Cruz Castro, 299 F.3d 5, 11 (1st Cir. 2002). Thus, we reject Chandler's contention that the colloquy introduced any ambiguity regarding the scope of the waiver.

Turning to the third prong of the Teeter analysis, Chandler argues that enforcement of the appellate waiver would work a manifest injustice because the agreement is "ambiguous" with regard to whether the cash would be converted to a drug quantity

for sentencing and that the ambiguity should be construed against the government as drafter of the document. We see no such ambiguity. Although the agreement does not state explicitly that the cash would be converted to a drug quantity for sentencing purposes, Chandler had stipulated in the plea agreement that the seized cash represented proceeds from an illegal enterprise. The import of this stipulation under the guidelines should have been clear: the conversion of cash to drug quantity is required by the sentencing guidelines when the sentencing court determines that the quantity of drugs seized does not include all of the drugs that were "part of the same course of conduct or common scheme or plan," U.S.S.G. § 1B1.3(a)(2), or that the quantity seized "does not reflect the scale of the offense," id. § 2D1.1 comment. n.12. Thus, Chandler should not have been surprised that the drug quantity resulting from the cash conversion would be factored into his sentence. If Chandler was surprised by the conversion, his complaint amounts to an allegation of ineffective assistance of counsel, which, as we discuss below, we will not consider on direct appeal.[4]

---

[4]Chandler also asserts that his plea colloquy was inadequate because "he was never properly informed by the district court that the probation officer could convert the seized cash into additional cocaine base resulting in a higher base offense level." When Chandler entered his plea, the district court did not yet have the sentencing report from the Probation Office. At the time of the change of plea, the district court is not required to anticipate every nuance of the PSR in explaining the sentencing consequences to the defendant. Here, the district court explained to the

Next, Chandler contends that the district court's conversion of cash to a drug quantity here was erroneous because such a conversion should be done only where the amount of cash seized is relatively large in comparison to the amount of drugs seized. However, the district court's conversion was in accord with well-established sentencing practices, see United States v. Santos Batista, 239 F.3d 16, 20-22 (1st Cir. 2001); United States v. Huddleston, 194 F.3d 214, 223-24 (1st Cir. 1999); United States v. Jackson, 3 F.3d 506, 510-11 (1st Cir. 1993) (noting that the sentencing judge is required to conduct this analysis even where the amount of currency seized is small), and allowing it to stand will not work a manifest injustice.

Chandler also argues that his sentence represents an unreasonable application of the 18 U.S.C. § 3553(a) factors. However, the miscarriage of justice requirement is "demanding enough to prevent defendants who have agreed to waive their right to appeal from successfully pursuing garden-variety claims of error." Teeter, 257 F.3d at 26. It suffices to say that Chandler's challenge to the reasonableness of his bottom-of-the-guideline-range sentence is nothing more than an assertion of garden-variety error that falls miles short of a "miscarriage of

---

defendant that the court would "make a decision on [his] sentence based on the information that is contained in the presentence report and any other information that may be presented to the Court" and warned that he could face a sentence of up to 130 years in prison. No more specificity was required.

justice." Accordingly, we enforce the appellate waiver and dismiss the appeal.

III.

In his pro se brief, Chandler raises an ineffective assistance of counsel claim, alleging that one of his attorneys assured him that he would receive a 97-month sentence if he entered into the plea agreement. In Teeter, we recognized that "a claim 'that the plea proceedings were tainted by ineffective assistance of counsel' is an illustration of an instance where an appellate court may refuse to honor the waiver." De-La-Cruz Castro, 299 F.3d at 14 (quoting Teeter, 257 F.3d at 25 n.9). However, Chandler's ineffective assistance claim is based upon facts that are not in the record and, hence, is not properly before us. United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) (noting that "[w]e have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions").

Chandler also notes the recent retroactive revisions to the sentencing guidelines for crack cocaine offenses and asks us to remand for resentencing in accordance with those revisions. The remedy for defendants who believe they are entitled to such resentencing is to file a motion with the district court seeking relief under 18 U.S.C. § 3582(c)(2). See, e.g., United States v. King, 518 F.3d 571, 576 (8th Cir. 2008). As such, we dismiss

Chandler's appeal without prejudice to his ability to move for modification of his sentence under the new guidelines.

Appeal dismissed.