UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| ISAAC NATHANIEL CHANDLER,<br>     Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA<br>     Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CR No. 06-107-01-M |

## AMENDED DECISION AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Before the Court are three motions filed by Isaac Nathaniel Chandler. They are: a motion

to vacate his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 47), two motions to add

supplemental claims (ECF Nos. 61, 68), and a motion for discovery (ECF No. 60). For the

reasons that follow, these motions are denied.

I.     BACKGROUND AND TRAVEL[1]

On May 4, 2006, Providence police detectives executed a search warrant for Mr.

Chandler and his two residences in Providence. On his person, the officers found $205 in cash,

jewelry and 6.7 grams of crack cocaine. They found an additional 34.13 grams of crack cocaine,

cutting and packaging materials, along with a loaded .45 caliber pistol, home theater equipment

and a safe containing $2,500 in cash at his residences. Officers also seized a 1994 Lexus vehicle.

After being advised of his rights, Mr. Chandler admitted that the crack cocaine and the firearm

belonged to him and that he sold cocaine and kept the firearm for protection.

---

[1]    A more complete discussion of Mr. Chandler's arrest, plea and sentencing proceedings are set out in
detail in the decision affirming his conviction and sentence, *see United States v. Chandler*, 534 F.3d 45
(1st Cir. 2008). For purposes of the instant motions, this Court recites only those facts pertinent to Mr.
Chandler's § 2255 claims.

In October 2006, Mr. Chandler was charged in a three-count Federal indictment with: (1) possession with intent to distribute five grams or more of cocaine base within 1,000 feet of a public school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 860; (2) possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and (3) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). During all pertinent proceedings pertaining to his plea and sentencing, Mr. Chandler was represented by court-appointed counsel.

Pursuant to a plea agreement, Mr. Chandler pled guilty to all three counts.[2] In that agreement Mr. Chandler agreed, *inter alia*, (1) that he possessed 40.91 grams of cocaine base in the form of crack cocaine, (2) that the items named in the indictment were subject to forfeiture "as proceeds of illegal conduct, property facilitating illegal conduct, property involved in illegal conduct ... and substitute assets for property otherwise subject to forfeiture," and (3) that a two-level enhancement for possession of a firearm would apply to his sentence. Plea Agreement at ¶¶ 1, 4, Jan. 5, 2007. Mr. Chandler also agreed to waive his right to file a direct appeal if the sentence imposed was within "the guideline range determined by the Court or lower." *Id.* at ¶ 12.

The Government, for its part, agreed to recommend "a term of imprisonment at the lowest point of the guideline range for the offense level determined by the Court under the United States Sentencing Guidelines or 97 months imprisonment, *whichever term was greater.* *Id.* at ¶ 2.a. (emphasis added.) The Government also agreed (1) not to file an information under 21 U.S.C. § 851, (2) not to prosecute Mr. Chandler under 18 U.S.C. § 924(c) for possession of a

---

[2] All plea and sentencing proceedings were conducted before Judge Ernest C. Torres of this Court. After the appeal concluded, the matter was transferred to Judge William E. Smith and, in May 2011, it was further transferred to the undersigned.

firearm in furtherance of drug trafficking; and (3) to recommend a 2-3 level reduction in his offense level for acceptance of responsibility. *Id.* at ¶¶ 2.b; 2.c.; 2.e.; 2.f.

At his change of plea hearing, Mr. Chandler acknowledged that he understood the terms of the plea agreement, including the terms governing the Government's recommendation and the restrictions thereon. *See* Tr. of Change of Plea Hr'g 10, Jan. 5, 2007. The Court informed Mr. Chandler that it was not bound by the recommendations in the plea agreement, that it would determine the applicable sentencing guideline range, and Mr. Chandler indicated his understanding. *Id.* at 11-12.

The United States Probation Office prepared a Presentence Report (PSR), calculating a guideline range of 210 to 262 months based on a total offense level of 32 and a Criminal History Category VI. In accordance with the plea agreement, the Government did not file a sentencing enhancement information pursuant to 21 U.S.C. § 851, which would have increased the mandatory minimum for Mr. Chandler's drug offenses to ten years with a maximum of life, nor did the Government charge Mr. Chandler with a violation of 18 U.S.C. § 924(c), which would have added a mandatory five-year term of imprisonment consecutive to the sentence imposed.

At sentencing, the Government's attorney, in accordance with the plea agreement, recommended a prison sentence of 210 months, the low end of the guideline range calculated by the PSR. Tr. of Sentencing 28, Mar. 23, 2007. Defense counsel argued for both a downward departure and a variant sentence. Upon hearing argument, the Court granted a "horizontal" departure and lowered Mr. Chandler's Criminal History Category from VI to V, which yielded a guideline range of 188 – 235 months.[3] After considering the factors under 18 U.S.C. § 3553(a),

---

[3] At the sentencing hearing Judge Torres noted: "The real question here is the argument about the over-representation of the criminal history. And I think [defense counsel] has made a good argument here, that ... as she points out, but for the fact that Mr. Chandler is classified as a career offender, he would have a criminal history category of 4 . . . but for the fact that he's been classified as a career offender, his guideline range would be 188-235 months ... But because he's been classified as a career offender, it's 210-262 months ... So it's made a significant difference in the guideline range." *Id.* at 35-36.

the Court imposed concurrent sentences of 188 months imprisonment as to Counts I and II and 120 months imprisonment as to Count III. *Id.* at 40-41.

Mr. Chandler appealed, represented by new counsel. On July 18, 2008, the First Circuit Court of Appeals dismissed his appeal, finding that Mr. Chandler's arguments were barred by the waiver-of-appeal provision in his plea agreement and that his ineffective assistance claims were premature. *See United States v. Chandler*, 534 F.3d 45, 49-51 (1st Cir. 2008).

Mr. Chandler then filed the instant 28 U.S.C. § 2255 motion to vacate. In his motion he claims: (1) that the Government breached its obligations in the plea agreement, (2) that he was ineffectively assisted by his counsel at sentencing, and (3) that he was ineffectively assisted by his counsel on appeal. Mr. Chandler subsequently filed two separate pleadings, seeking to supplemental his motion to vacate. The first was filed on July 2, 2010 and claims that two of the detectives who arrested him falsified information in order to obtain the warrants used to search his residences, and the second, filed on October 1, 2010, asserts that the fact that state court warrants were used as the basis of Mr. Chandler's federal prosecution violated federal procedure and his due process rights. Additionally, Mr. Chandler filed a motion for discovery in connection with his first supplemental pleading. These three motions before the Court are ready for decision.[4]

## II.    MOTION TO VACATE

---

[4]    Although Mr. Chandler has requested an evidentiary hearing, no hearing is required in connection with any issues raised by this motion to vacate or supplemental pleadings, because, as discussed *infra*, the files and records of this case conclusively establish that his claims are without merit. *See David v. United States*, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations omitted).

The grounds justifying relief under § 2255 are limited.[5] A court may grant such relief only if it finds a lack of jurisdiction, constitutional error, or a fundamental error of law. *See United States v. Addonizio*, 442 U.S. 178, 184-185 (1979) ("An error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.") (internal quotations omitted).

Moreover, a motion under § 2255 is not a substitute for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982). A movant is procedurally precluded from obtaining § 2255 review of claims not raised on direct appeal absent a showing of both "cause" for the default and "actual prejudice" -- or, alternatively, that he is "actually innocent" of the offense for which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see also Brache v. United States*, 165 F.3d 99, 102 (1st Cir. 1999). Claims of ineffective assistance of counsel, however, are not subject to this procedural hurdle as the failure to bring those claims "on direct appeal is not subject to the cause and prejudice standard." *Knight v. United States*, 37 F.3d 769, 774 (1st Cir. 1994).

A.    Timeliness of Motion to Vacate

As a threshold matter, the Government argues that Mr. Chandler's original § 2255 motion was untimely because the motion was docketed after the filing deadline. *See* U.S. Br. 4-5, ECF No. 49. On October 13, 2009, just days before the expiration of the one-year limitations period, Mr. Chandler mailed his initial § 2255 motion to the "United States District Court for the District of Rhode Island, 50 Kennedy Plaza, Providence, Rhode Island 02903," which is the street address of the United States Attorney's Office. The motion was received on October 19, 2009.

---

[5]    Title 28 U.S.C. § 2255 (a) provides in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

On January 10, 2010, Mr. Chandler mailed a letter to the U.S. District Court stating that the motion was mailed to the incorrect address because he did not have access to an updated court address. The Court docketed Mr. Chandler's motion to vacate on January 27, 2010, over three months after the deadline.

The Government asserts that the motion should be considered as filed on January 27, 2010 and that Mr. Chandler should not receive the benefit of the so-called prisoner mailbox rule. *Morales-Rivera v. United States*, 184 F.3d 109, 109 (1st Cir. 1999). Mr. Chandler counters that the prisoner mailbox rule should apply, excusing his mailing error, because he is a *pro se* litigant inexperienced in these formalities who was assisted in addressing the envelope by a law clerk at his prison facility. *See* Pet'r's Reply to Government's Resp. to Mot. to Vacate 3-7, ECF No. 51.[6] He further contends that even if he was negligent in addressing the envelope, the prosecutor's office was equally negligent for receiving and signing for mail intended for this Court rather than promptly returning the mailing to Mr. Chandler, permitting him an opportunity to timely re-file. *Id.*

Generally, a number of courts considering whether *pro se* inmate papers mailed to an incorrect address may invoke the mailbox rule have given *pro se* prisoners the benefit of the doubt. *See e.g. Mayne v. Hall*, 122 F.Supp.2d 86 (D. Mass. 2000) (§ 2254 petition mailed to court at court's former street address deemed timely filed under mailbox rule); *Hollins v. United States*, 2005 WL 1827914 (E.D. Mo. Aug. 2, 2005) (deeming § 2255 petition to be timely filed, where petitioner promptly re-mailed his incorrectly addressed petition upon its return). However, courts have also noted that strict compliance and diligence is required to obtain the

---

[6]   Mr. Chandler asserts that David Price Bomboy, a law clerk at FCI Ray Brook, assisted him by addressing the envelope on Mr. Chandler's behalf, using a return address on an envelope from the Court because there was no address book for the federal courts in the prison library inventory. Mr. Chandler has submitted an Affidavit from Mr. Bomboy, who avers that, at the time the motion was filed, he had no access to either computer or paper resources listing an updated address for this Court.

benefits of that rule. *See Thompson v. Raspberry*, 993 F.2d 513, 515 (5th Cir. 1993) (mailbox rule does not relieve a prisoner of responsibility of doing all that is reasonably possible to ensure that documents are received by court in a timely manner, including properly addressing outgoing mail); *Solis-Caceres v. United States*, No. 8:09-CV-539-T-27TGW, 2010 WL 2731280 (M.D.Fla. July 9, 2010) (finding incorrectly addressed § 2255 motion to be untimely due to prisoner's failure to use prison's legal mailing system, as required by § 2255 Rule 3(d)).

The precise issue in this case – the applicability of the mailbox rule to a *pro se* inmate's incorrectly addressed § 2255 petition has not been squarely decided by the First Circuit.[7] *See Morales-Rivera*, 184 F.3d at 111, n.4 (after finding mailbox rule applicable to inmate's filing of § 2255 motion to vacate, court noted that the government was free to argue on remand that inmate had negligently addressed his motion). Other courts that have addressed this issue are split. *Compare, e.g., United States v. Diaz*, No. Civ.A. 95-5610, 1999 WL 391384 (E.D. Pa. May 27, 1999) (finding motion for reconsideration mistakenly sent to U.S. Attorney's office to be timely filed, where petitioner received a return receipt acknowledging delivery), *with Daniels v. United States*, No. 3:05-CV-768, 2006 WL 2433462 (N.D. Ind. Aug. 18, 2006) (§ 2255 petition filed three months after expiration of 1-year limitations period deemed untimely, even though petitioner had previously mailed a timely § 2255 petition, but misdirected it to U.S. Attorney's office).

The circumstances of this case favor application of the mailbox rule. In light of Mr. Chandler's good faith reliance on the prison facility law clerk's assistance to prepare and file

---

[7] Pursuant to the mailbox rule, "a pro se prisoner's motion ... is [deemed] filed on the date that it is deposited in the prison's internal mail-system for forwarding to the district court, provided that the prisoner utilizes, if available, the prison's system for recording legal mail." *Morales-Rivera v. United States*, 184 F.3d 109, 109 (1st Cir. 1999). The court noted that the rule, first set forth in *Houston v. Lack*, 487 U.S. 266 (1988), applies to inmate petitions filed under both 28 U.S.C. §§ 2254 and 2255. *Id.* at 111. *See also* Rule 3(d) of the Rules Governing § 2255 Proceedings for the United States District Courts ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system [for legal mail] on or before the last day for filing.").

legal paper and his correspondence with the Court when he realized his addressing error, the Court finds that Mr. Chandler's motion to vacate was timely filed. *See Diaz*, 1999 WL 391384, at *1-2; *Mayne v. Hall*, 122 F.Supp.2d 86, 95-96 (D. Mass. 2000).

B.    Alleged Breach of Plea Agreement

Moving on to the substance of Mr. Chandler's arguments advocating that his conviction and sentence be vacated, Mr. Chandler first claims that the Government breached the plea agreement because it characterized him as a career offender at sentencing, causing the Court to impose a more severe sentence than contemplated in the agreement. He seeks "specific performance" by the Government of ¶ 2.a. of the agreement, which he contends contemplates a 97-month sentence. Pet'r's Br. 3, ECF No. 47.

The Court finds that the Government did not breach its obligations under the plea agreement. The provision in question states that:

> a.    The government will recommend that the Court impose a term of imprisonment at the lowest point of the guideline range for the offense level determined by the Court under the United States Sentencing Guidelines . . . *or* 97 months imprisonment, *whichever term is greater* . . . If however, Defendant seeks a downward departure under the guidelines or advocates for a sentence below the guideline range, the government will then be free to recommend any term of imprisonment within the applicable guideline range found by the Court.

Plea Agreement, ¶ 2.a. (emphasis added).

The Government recommended the lowest sentence within the applicable guideline range, i.e. 210 – 216 months imprisonment, as promised. The fact that this recommendation was greater than the 97 month alternative mentioned in the plea agreement does not indicate nonperformance because the agreement specifically provided that the government would recommend the larger of the two possible sentence ranges. Moreover, the Government never agreed "to oppose whatever upward adjustments the probation office might recommend or the district court might opt to impose." *United States v. Vazquez-Ortiz*, 201 F.3d 429 at *1 (1st Cir. 1999) (Table). The prosecutor's reference at sentencing to Mr. Chandler's status as a career

8

offender, as discussed in the PSR, likewise does not constitute a breach of the plea agreement. Furthermore, Mr. Chandler specifically agreed at his plea hearing "that the court was not bound by the parties' stipulations of fact, offense level adjustments, or the government's recommendations" and that "even if the Court's guideline determinations and sentence [were] different than [Mr. Chandler] expect[ed], [he would] not be allowed to withdraw [his] plea of guilty." *See United States v. Chandler*, 534 F.3d 45, 47 (1st Cir. 2008).[8] Finally, the Government performed the other obligations under the plea agreement, including refraining from filing a § 851 information and additional gun charges. Thus, Mr. Chandler's invocation of "contract principles" does not assist him, as this Court has found no breach -- contractual or otherwise -- by the Government of its obligations under the plea agreement.

Mr. Chandler's reliance on *United States v. Riggs*, 287 F.3d 221 (1st Cir. 2002) in support of his claim is misplaced. Pet'r's Br. 3-5, 7-8, ECF No. 47. In *Riggs*, the Government failed to recommend a sentence based on a drug quantity of 5 to 50 grams of crack cocaine, as promised in the plea agreement, and instead recommended a sentence based on 480 grams of crack cocaine, causing Riggs to be sentenced based on the higher drug quantity. *Id.* 287 F.3d at 224-25. The court noted that neither the prosecutor nor defense counsel even mentioned the pertinent provision of the plea agreement at sentencing, *id.* at 224, n.4, and vacated Riggs' sentence. *Id.* at 226. Unlike the situation in *Riggs*, the record in this case demonstrates that the Government, defense counsel and the Court were all aware of the provision in question.[9] By

---

[9]    Indeed, defense counsel acknowledged that the 97-month sentencing option was not available given the applicable guideline range of 210-262 months. *See* Tr. of Sentencing Hr'g 23, Apr. 24, 2007. Moreover, Judge Torres questioned the prosecutor at length as to whether, absent Mr. Chandler's second offense triggering his career offender status, 97 months would be reasonable and challenged the Government's assumption that an applicable sentencing guideline range was always reasonable. *Id.* at 29-35. At most, while the Government's position may have been "somewhat troubling" to the Court, there was no error in the proceedings, as the Court was entitled to rely upon the applicable guideline range, which it separately found to be correctly calculated. *See Rivera-Rodriguez*, 489 F.3d at 57-58 (finding no breach where prosecutor recommended sentence as provided in plea agreement, but made reference to

contrast, the Government in this case agreed to recommend the lowest point of the applicable guideline range or 97 months, whichever was greater, and its recommendation was in line with that agreement. *United States v. Rivera-Rodriguez*, 489 F.3d 48, 57 (1st Cir. 2007). Therefore, in light of the facts at issue and the applicable case law, the Court finds that Mr. Chandler's claim that the Government's breach of the plea agreement justifies the vacation of his conviction and sentence is without merit.

C.    Ineffective Assistance Claims

"To prevail on a claim of ineffective assistance of counsel, a defendant must show not only that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment,' but also that the deficient performance prejudiced the defense and deprived the defendant of a fair trial." *U.S. v. Manon*, 608 F.3d 126, 131 (1st Cir. 2010); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To satisfy the reasonable performance prong, the defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" *Manon*, 608 F.3d at 131 (quoting *Strickland*, 466 U.S. at 690). The prejudice prong requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 695). "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *Id.*

1.    Sentencing Counsel

Mr. Chandler contends that his trial counsel was deficient for failing to argue that the Court had authority under *United States v. Rivers*, 50 F.3d 1126, 1131 (2d Cir. 1995), and related

---

quantities of drugs other than those mentioned in plea agreement and to seeking a higher offense level had case gone to trial).

case law, to grant a *vertical* departure, thereby reducing his offense level. Although the Court did grant a horizontal departure reducing his criminal history category, Mr. Chandler argues that the Court was not aware of its authority under the guidelines, and as such, Mr. Chandler was deprived of an opportunity for a lower sentence. Pet'r's Br. 10-13, ECF No. 47.

Mr. Chandler's argument fails because the argument he insists his counsel should have made to the Court misstates the law as it existed at the time of his sentencing in 2007. The 2003 amendments to the U.S. Sentencing Guidelines changed the permissible departures in sentencing for drug offenses such as the ones Mr. Chandler pled to, superseding *Rivers*. *See* USSG, App. C, Amendment 651; *United States v. Grier*, 585 F.3d 138, 142-143 (3d Cir. 2009) (recognizing that the 2003 amendments to USSG § 4A1.3 precluded vertical departures for overrepresentation of criminal history). *See also United States v. Pierre*, No. 07-003S, 2011 WL 3360116, at *2-*3 (D.R.I. 2011) (rejecting an identical claim).[10] Therefore, Mr. Chandler's counsel cannot be deemed ineffective for failing to argue invalid law. *See Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999) (counsel not required to assert frivolous or futile motions or arguments).

As for the second part of the *Strickland* test, Mr. Chandler was not prejudiced by any alleged mistake by counsel because there is no evidence that the Court would have imposed a lesser sentence. The Court, although free to vary from the guideline range after ruling on Mr. Chandler's motion for a downward departure, decided that the appropriate sentence, in light of all of the factors under 18 U.S.C. § 3553, was a sentence of 188 months imprisonment. Thus, even if the Court had authority to award a further departure, it is unlikely that it would have done

---

[10]     The cases Mr. Chandler cites in support of his motion – *see e.g. United States v. Lacy*, 99 F.Supp.2d 108 (D. Mass. 2000); *United States v. Eugene Terrell Patrick*, No. 96-10047 (D. Mass. Feb. 26, 1999) -- likewise predated the 2003 amendment to USSG § 4A1.3 and thus do not assist him.

so, in light of the Court's refusal to vary from the guideline range.[11] It follows that Mr. Chandler cannot demonstrate prejudice.

### 2.    Appellate Counsel

Mr. Chandler next claims that his counsel on appeal was ineffective in failing to challenge the appeal waiver provision based on the Government's alleged breach of the plea agreement, rather than on an alleged miscarriage of justice due to the conversion of currency seized for purposed of calculating drug quantity. Pet'r's Br. 14-17, ECF No. 47.

This claim requires little discussion. Applying the *Strickland* two part test, the Court finds that Mr. Chandler's appellate counsel's performance did not fall "below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As discussed *supra*, the Government did not breach the plea agreement, and thus it would have been fruitless for counsel to make that argument on appeal. It is well settled that counsel's performance is "not deficient if he declined to pursue a futile tactic." *Vieux*, 184 F.3d at 64; *see also United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978) ("Counsel is not required to waste the court's time with futile or frivolous motions."). Moreover, appellate counsel could reasonably have concluded that an argument based on an alleged miscarriage of justice would be stronger than one based on a non-existent prosecutorial breach of plea agreement. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("Appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."). Accordingly, Mr. Chandler's ineffective assistance claim regarding his appellate counsel fails.

---

[11]    This is especially true in a case such as here, where Mr. Chandler's criminal history category was determined by his career offender status, but his offense level was the result of the application of USSG § 2D1.1, which yielded a higher offense level than the career offender provision. Given that Mr. Chandler's status as a career offender only affected his criminal history category and not his offense level, there is no reason to think that the Court would have departed vertically even if it had been able to do so.

In light of this Court's conclusions, after considering Mr. Chandler's arguments supporting his motion to vacate and the applicable case law and statutes, that motion is denied.

## III. MOTIONS TO "SUPPLEMENT" CLAIMS

Mr. Chandler has filed two motions for leave to file "supplemental" claims, each of which seeks to assert additional claims in connection with the instant motion to vacate. The first motion raises a claim of misconduct by two Providence Police detectives who participated in the Mr. Chandler's investigation and arrest. Pet'r's Mot. to Supp. Pleadings 2, ECF No. 61. Mr. Chandler's second motion similarly asserts that the detectives improperly obtained warrants from state court rather than federal court prior to arresting him and searching his residences, in violation of Rule 41 of the Federal Rules of Criminal Procedure and Mr. Chandler's due process rights. Pet'r's Mot. to Supp. Pleadings 2-6, ECF No. 68. The Government has opposed both motions. The Court finds that both motions to supplement must be denied, as each of the proposed claims fails for both procedural and substantive reasons.

As a threshold matter, the Government argues that Mr. Chandler's new claims should be characterized as proposed amended pleadings, rather than supplemental pleadings, because the factual occurrences asserted in those claims occurred prior to the filing of his initial § 2255 motion. *See United States v. Hicks*, 283 F.3d 380, 385 (D.C.Cir. 2002) (unlike amendments, which are based on matters that transpired prior to the filing of the original pleading, supplemental pleadings set forth "'transactions, occurrences, or events that have happened since the date of the pleading sought to be supplemented.'") (quoting Fed.R.Civ.P. 15(d)). However, a pleading generally does not become a supplement merely because it references facts that occurred subsequent to the original complaint. Rather, the appropriate bases for supplemental pleadings are "new facts bearing on the relationship between the parties." *Id.* at 386 (citing 6A

13

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1504 at 177-83 (3d ed. 2010)).[12]

Here, although Mr. Chandler's new claims may have been motivated by events that occurred subsequent to the filing of his motion to vacate (i.e., the indictments of the two detectives), the new claims are actually based on events that happened at the time of his arrest (i.e., the alleged improprieties of the detectives in obtaining search and arrest warrants), well before the filing of the instant motion to vacate. As such, this Court will treat the proposed claims as amended, not supplemental pleadings. The filing of amended pleadings is governed by well-established rules and principles, which this Court will now apply to each of Mr. Chandler's proposed claims.

## A.    First Amended Pleading

Mr. Chandler's first amended claim asserts that the actions of certain Providence Police detectives leading to his arrest and conviction for drug and gun offenses were "tainted by corruption," in view of the subsequent arrest and indictment of those detectives for drug-related crimes.[13]    Specifically, Mr. Chandler asserts that the two detectives "falsified all sworn documents presented to judicial authorities to obtain search and arrest warrants [and then] utilized [the] subsequently obtained search and arrest warrants to convict" Mr. Chandler.[14] He

---

[12]    This Court is aware that "[t]he distinction between an amended pleading and a supplemental pleading is often disregarded for purposes of relation back under Rule 15(c)." *FDIC v. Knostman*, 966 F.2d 1133, 1138 (7th Cir. 1992);  6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1504 at 184 (2d ed. 1990). Here, however, the distinction is important, given Mr. Chandler's efforts to characterize his new claims as "supplemental pleadings."

[13]    The named Detectives are Joseph Colanduono and Robert Enright. Mr. Chandler was arrested on May 4, 2006; Colanduono and Enright were indicted in March 2010, nearly four years later. The Court takes judicial notice that the charges against Enright were subsequently dismissed; the record is silent as to the status of the charges against Colanduono.

[14]    In his first amended claim Mr. Chandler also alleged that the detectives planted evidence against him. Pet'r's Mot. to Supp. Pleadings 2, ECF No. 61. However, he subsequently retreated from these allegations, stating in his reply to the Government's objection that he "did not actually declare that the drugs were per se 'planted' on him in this case ..." and that while his supplemental pleading "did word

further asserts that the use of the evidence obtained through those search warrants against him constituted *Brady* violations. *See Brady v. Maryland*, 373 U.S. 83 (1963); *see* Pet'r's Mot. to Supp. Pleadings 2-3, ECF No. 61. This claim is both procedurally barred and substantively devoid of merit.

A federal prisoner's efforts to amend his § 2255 motion are governed by Fed. R. Civ. P. 15. *See United States v. Ciampi*, 419 F.3d 20, 23 (1st Cir. 2005). Under Rule 15, an untimely pleading amendment to a § 2255 habeas motion may only be allowed if the amendments "relate back" to the timely filed original pleading -- i.e., "the claim asserted in the amended plea 'arose out of the *conduct, transaction, or occurrence* set forth or attempted to be set forth in the original pleading.'" *Id.* (quoting Fed. R. Civ. P. 15(c)(2)). "[I]n the habeas corpus context, the Rule 15 'relation back' provision is strictly construed, in light of 'Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them].'" *Id.* (quoting *Mayle v. Felix*, 545 U.S. 644, 657 (2005)). "Accordingly, amended habeas corpus claims generally must arise from the 'same core facts,' and not depend upon events which are separate both in time and type from the events upon which the original claims depended." *Id.* at 24.

Here, the allegations in Mr. Chandler's first supplemental pleading – that two of the arresting officers planted evidence and falsified affidavits in order to obtain search warrants against Mr. Chandler -- involve facts that differ substantially from the allegations in his original motion to vacate, where he alleged that the Government breached the plea agreement and ineffective assistance at sentencing and on appeal. Because the facts asserted in the first amended claim involve a completely different set of facts from those on which the original

---

the issue as the officers having planted 'evidence,' the true meaning [he] was trying to present was that the officers planted drugs in th[eir own] investigations which . . . [were the subject of] their personal charges," and "not so much that the officers planted the specific drugs in this case." Pet'r's Traverse (Reply) to Gov't's Objection 1, 4, ECF No. 64 (spelling corrections made). Thus, this Court need not address this allegation.

claims depended, the new claim does not arise from "the same conduct, transaction, or occurrence" as that set forth in his original § 2255 claims. As such, the claim does not relate back, is untimely and may not be asserted here. *See Ciampi*, 419 F.3d at 24; *United States v. Thinh Cao*, No. 05-134 ML, 2011 WL 4055413, at *9 (D.R.I. Sept. 12, 2011) (rejecting proposed amended claim as untimely).

Even if the amended claim were appropriate, Mr. Chandler's challenge to the search warrants used against him would fail. First, it is well settled that "a defendant who unconditionally pleads guilty waives all 'independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" *United States v. Gaffney*, 469 F.3d 211, 214 (1st Cir. 2006) (unconditional guilty plea effectively waives all independent claims of alleged violations of constitutional rights that occurred prior to entry of guilty plea) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *see United States v. Valdez-Santana*, 279 F.3d 143, 145 (1st Cir. 2002) (same); *United States v. Cordero*, 42 F.3d 697, 699 (1st Cir. 1994) (same, barring Fourth Amendment suppression claim). Here, Mr. Chandler's guilty plea was voluntarily made, and thus his Fourth Amendment claims based on the insufficiency of the search and arrests warrants are precluded.

Moreover, even if this claim were to be considered on its merits, it falls well short of stating any claim warranting relief. Mr. Chandler merely avers some connection between his case and the indictments of the two state detectives nearly four years later, but provides no factual basis for that connection. Further, the motion and supporting papers are devoid of any facts that would draw into question the validity of the investigation leading to Mr. Chandler's conviction and sentence. Thus, adding the proposed new claim would be an exercise in futility. *See Muskat v. United States*, 554 F.3d 183, 195-96 (1st Cir. 2009) ("The law is settled that

futility is a sufficient basis for denying leave to file an amended complaint.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).[15]

B.    Second Amended Pleading

This Court's analysis with respect to Mr. Chandler's second amended claim yields a similar result. Mr. Chandler asserts that the fact that the warrants used to support his federal prosecution were obtained from the Rhode Island state court rather than this Court violated Fed. R. Crim. P. 41 and his due process rights.[16] Because the facts asserted in this claim are distinct from the facts on which his original claims are based, the second new claim does not arise from "the same conduct, transaction, or occurrence" as that set forth in his original § 2255 motion to vacate. As such, this claim is likewise procedurally barred as untimely under Rule 15. *See United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005); *Thinh Cao*, 2011 WL 4055413 at *9.

Even if this amended claim were appropriately made, Mr. Chandler's challenge to the search warrants used against him would fail on several grounds. First, as stated previously, Mr. Chandler's voluntary plea of guilty precludes his constitutional claims based on the insufficiency of the search and arrests warrants. *See Gaffney*, 469 F.3d at 215; *Tollett*, 411 U.S. at 267.

Second, this amended claim is likewise meritless because it has long been recognized that a federal prosecution may properly result from an investigation based on a state court search warrant. *See United States v. Soule*, 908 F.2d 1032, 1038 (1st Cir. 1990) (upholding search warrant obtained from state court judge by federal agent in state-federal investigation); *United*

---

[15]    As the First Circuit's affirmance confirms, there was more than sufficient evidence to uphold Mr. Chandler's conviction. Mr. Chandler admitted to police, after being informed of his rights that he did possess the crack and the firearm, that he sold crack, and that he kept the firearm for protection. *United States v. Chandler*, 534 F.3d 45, 47 (1st Cir. 2008). There were other officers involved in his arrest besides Detectives Colanduono and Enright. *Id.* Moreover, Mr. Chandler admitted his guilt on all counts in the plea agreement and in open court at his change of plea hearing. *Id.* at 48.

[16]    Mr. Chandler states that the two Providence police officers at issue "were completely dishonest in their prepar[ation] of the affidavits at issue, in that this was a fully federal case, yet the officers who obtained the warrants, did so by application to a Rhode Island state court judge, when a federal judge or magistrate was fully available to them." Pet'r's Mot. to Supp. Pleadings 2, ECF No. 68.

17

*States v. Mitro*, 880 F.2d 1480, 1484-85 (1st Cir. 1989) (same); *United States v. Krawiec*, 627

F.2d 577, 581-82 (1st Cir. 1980) (upholding search warrants issued by state judge based on

federal information in state-federal investigation). Moreover, as in *Soule*, the circumstances here

"allow no room for an inference that the cooperating law enforcement officials, whether state or

federal, acted other than in the interests of furthering the efficient investigation and prosecution

of violations of state and federal law as warranted by the fruits of their investigation." *Soule*,

908 F.2d 10 at 1038. Therefore, the fact that the local police officers were working with a DEA

Task force does not affect the legality of the warrant or arrest here.

Finally, Mr. Chandler's reliance on this Court's ruling on his motion for return of

property is misplaced. This Court ruled that Fed. R. Crim. P. 41(g) was inapplicable in this case

because the seizure and custody of any property was pursuant to a state search warrant. *See* Text

Order, July 7, 2011. This ruling did not address the underlying legality of the search warrants in

the first instance.[17]

In light of these considerations, Mr. Chandler's second amended claim cannot stand.

Apart from his allegations that the officers submitted false affidavits -- which allegations have

been found baseless -- Mr. Chandler does not raise any fact demonstrating that the search

warrants were deficient under either federal or state standards. Thus, the use of the warrants in

Mr. Chandler's subsequent federal prosecution was proper and his motion to supplement his

motion to vacate is denied.[18] Consequently, and in light of this Court's determinations on Mr.

---

[17]    This Court is aware that its ruling affirming the Magistrate Judge's Memorandum and Order has
been appealed to the First Circuit. This has no impact on this Court's rulings herein.
[18]    Mr. Chandler has made additional arguments relating to the Providence Police detectives' conduct.
To the extent Mr. Chandler's thinly pled *Brady* claim warrants any consideration, it fails because he does
not show that the Government withheld any exculpatory evidence during his prosecution, whether due to
any actions of the two detectives or otherwise. Additionally, Mr. Chandler's claim that the dishonesty of
the Detectives in obtaining the warrants was so violative of due process that it rendered this Court without
jurisdiction is frivolous and rejected without discussion. *See United States v. Lussier*, 929 F.2d 25, 27
(1st Cir. 1991) (18 U.S.C. § 3231 indisputably gives the district courts subject matter jurisdiction over all
offenses against the laws of the United States.'"); *Prou v. United States*, 199 F.3d 37, 45 (1st Cir. 1999).

Chandler's proposed amended claims, his requests for appointment of counsel and for an evidentiary hearing in connection with those claims are denied.

IV.     MOTION FOR DISCOVERY

In light of this Court's decisions denying Mr. Chandler's motion to vacate and his two motions to supplement, his motion for discovery is denied as moot.

V.      CONCLUSION

For the reasons set forth above, Mr. Chandler's motion to vacate is hereby DENIED.   In addition, both motions for leave to file supplemental pleadings and his motion for discovery are likewise DENIED.


SO ORDERED:

John J. McConnell, Jr.
United States District Judge


Date:   December 6, 2011